Mr. Wright, you may proceed. May it please the Court, My name is James Wright. I represent the appellant and cross-appellee Neri Contractors & Excavators, Inc. In this matter, the trial court ruled that Neri had not satisfied the compaction standard of the party's contract. The trial court further held that Hallmark was entitled to recover the cost of remediating 36 lots on the project which Neri had worked on. We submit that those decisions of the trial court are against the manifest weight of the evidence presented to the court. On the compaction issue, Hallmark's own expert at trial acknowledged that the compaction standard is roughly equivalent to what can be achieved by persons experienced in the field using the appropriate equipment. Hallmark's expert testified that the use of that equipment and observing the equipment walking out of the ground, as it's called, provides a good indication that the compaction standard has been satisfied. Is that a question of fact as to whether or not the excavator's use of a heavy piece of equipment and measuring the depth of the tires going down or drilling a hole was the proper way to determine the standard of compaction, the amount of compaction? I'm not sure that's a question of fact. I think that may be a question of law here as to whether or not Neri followed the proper method. And maybe it's a mixed question of law, in fact. First of all, the evidence is undisputed that, in fact, they followed procedures that were acknowledged by Hallmark's own expert to be good procedures. They followed – there was nothing in the contract to require any different procedure. There was no evidence presented that any standard in the industry required a different procedure. They used a procedure that Hallmark's own president during the course of the work approved. He was satisfied with that. The expert for Hallmark at trial acknowledged that it was a good procedure, and Neri testified that they achieved the compaction standard by using that. Wasn't there a witness from the company that was eventually hired to make an evaluation, mispronounced his name? Matt Galinsky, Your Honor. Matt Galinsky. Didn't he take a position that the standard used by the excavator was not as efficient as the standard of drilling a hole down, and then analyzing the compaction of the pieces of dirt that would need to be removed from the pipe? I'm not sure, Your Honor, he testified about the efficiency of one versus the other. He certainly did testify – he did testify as to the borings that he had drilled after the fact, quite a while after the fact. But, again, the first question in our mind is whether or not those borings were a required method to show that the compaction standard had been satisfied. We submit that the evidence was clear that they did not need to drill borings. How can we say that the trial court's determination was against the man at the suite of the evidence when he had expert testimony that he relied upon in making his determination? Dunning and Galinsky both testified. The trial court gave their testimony appropriate weight and made its ruling. Your Honor, once again, I think it goes as to whether or not that type of testing was required. First of all, I'd like to point out that Neary produced the only witnesses who were on site while the work was being performed. Neary was, in effect, an expert in the field. He'd been involved in the industry for many years. He was the on-site superintendent for this project. He was there for 75 to 80 percent of the time. He used a method that even Hallmark's own expert acknowledged was an appropriate method. There's no testimony that it was not an accurate method. And then for a party to come in long after the fact when that same party was 19 months delinquent in the payment of invoices of Neary and bring in a method, namely soil borings, that weren't required by the contract, we submit that is not evidence that overweighs or that satisfies the decision of the trial court. Do you agree that the one standard regarding compaction was that the compaction must meet 100 percent standard proctor density? There's no dispute about that. There is no dispute about that, Your Honor, to be precise. That was the ultimate purpose of taking a drilling or running a heavy piece of equipment over the land to determine whether or not that compaction standard was met. That is correct. And wasn't there also some dispute about whether the use of the heavy piece of equipment was done relatively, wasn't done in all the lots that were involved? I don't believe so, Your Honor. I believe other than two lots that were admittedly in question, admittedly by Neary's own testimony, lots 47 and 48, other than those two lots, I don't believe there's any question in the record that Neary had used that method throughout the site. But we do agree, as Judge Burkett indicated, that the trial court relied on the testimony of Dunning and McElwain Steed in his finding regarding the compaction and the right of the plaintiff to recover. I would agree that the trial court did rely on that testimony. I would submit that, first of all, I would dispute the fact that McElwain Steed was the only expert involved in the whole matter or a trial. Neary was an expert. He was there on site. He was an expert as to the method that was used, the method that was approved by Hallmark's own president. Hallmark, at trial, brought in an expert, McElwain Steed, who was not involved in the work. He had not been involved in the project. He may have been an expert as to soil borings, but that was not a method that was used. It was not a method that was required. We would submit that Neary was the better expert at trial. Well, we're not here to reweigh the evidence. That's the trial court's job. Correct? So how do we, as the reviewing court, credit another expert's testimony more than the plaintiff's experts? Certainly, I would agree that there can't be a reweighing of the evidence. I acknowledge the standard is manifest weight of the evidence. But, again, I would submit that Hallmark used a method and was relying on evidence, and the trial court relied on that evidence, that wasn't something that was required. It was after the fact. And it was, in fact, by Hallmark's own expert's testimony, a method that is not typically used during the course of excavation. They came in with soil borings. That's not something that's typically done. There was work done at the time of the project. It was, in their own estimation, it was accurate. It was done with proper equipment. It satisfied Hallmark's precedent. And for the court, then, to rely on a procedure that was used after the fact to question what had been done, I think that's not simply a question of fact. It's a question of law. Do you have any authority that suggests that a trial court cannot consider and take into consideration that type of evidence? I don't have a case to cite as I stand here, Your Honor, although to me it would be a matter of fairness and a matter of basic contract law as to what was required in terms of testing procedures, of who was doing the work, and whether it's fair and whether it's sensible for a party who's in default to then come back eight, nine months later and say, you know what, the method that you used that we approved while we were on site by our president at the time, you know what, we're not satisfied with that anymore, and we're going to do something else, and we're going to drill some borings, and even though that's a method that's not typically used at the time that you do your work, we're going to do that. Do I have a case to support that? No, other than, again, I don't think that's what was required of an area here, and I think for the court to rely on that was not appropriate. In fact, the evidence that was presented at trial was undisputed. Again, Neary was experienced in the field, that he used the proper equipment, that he utilized a testing procedure known as proof rolling, which Hallmark's own expert acknowledged in his report was a proper testing procedure. In fact, he recommended it in his report. The evidence as to each of those items is not disputed. Further, there was evidence at trial that Neary asked Hallmark, inquired of Hallmark, of their president at the time of the work, whether Hallmark was interested in having TSC, that being Mackalinski's company, come in and conduct additional tests of the compaction. Hallmark's president at the time, David Mays, who again had personally observed Neary's work, responded no. And at trial, David Mays, Hallmark's president at the time the work was done, testified that the work had been performed to his satisfaction. Could you address the plaintiff's position on cross appeal that the trial court erred in awarding extras? Certainly, Your Honor. If I may give just a brief background on the facts, Neary submitted five invoices for extras. Two of those were paid by Hallmark. Those were for a silt fence and for tree removal. And Hallmark has acknowledged in its brief that the payment of those invoices was appropriate. They paid them and they're acknowledging it was appropriate to do so. The fact that those were extras is established by Neary's proposal. Now, they've acknowledged that the proposal, Neary's proposal, was part of the party's contract. And that proposal excludes erosion control. It excludes silt fencing and it excludes remedial work. So, therefore, those extras, silt fencing, tree removal, those are extras. They weren't part of the base compensation. They were established by Neary's proposal to be extras. Hallmark paid for two of those. Now, there were also three invoices that were not paid, three invoices for extras. Those were for remedial work on detention ponds. And Hallmark's acknowledged that. They've acknowledged that the unpaid extras were for remedial work on detention ponds, including excavation of fill mistakenly placed on one of the ponds by another subcontract. That from Hallmark's own brief. Now, Hallmark argues that there should have been an executed change order for those extras that were not paid. Well, first of all, that's required by a portion of their contract that refers to an Exhibit D. It says these are the people that can sign the change order. Well, there was no Exhibit D to the contract. And it was their contract. Now, Hallmark argues that Neary knew from experience who could have signed that, namely David Mays. But, Your Honor, again, they ignore that there hadn't been signed purchase orders for the two extras that they did pay and that they acknowledge were appropriate to have been paid. So it makes no sense to say, well, you should have had change. Orders for those two, even though you didn't need them for the others. Your time limit is 15 minutes. We have a timekeeper, ordinary. Today, we do have a timekeeper. I didn't know that. Your time is up. You can finish another point. Well, just in conclusion, we would ask again, we submit that the decision against the manifest way to the evidence. We would ask the court to reverse the judgment in favor of Hallmark, affirm the portion in favor of Neary, and find it as a corollary that we were the sole prevailing party. I'm going to ask a question on when you come back, just to let you know, regarding the attorney's fees. But I'll save it for then. Good morning, Your Honor. May it please the court, my name is James Allen. I'm the attorney for the appellee in the cross-appellant Hallmark Holmes. Before I begin, I do have a question. With respect to my cross-appeal, do I have any time after the appellant finishes with his reply? Cover both your response to the appellant's argument and your cross-appeal. Thank you, Your Honor. Your Honor, the standard of review here is pretty clear. The court review would defer to the trial court's decision unless the decision is against the manifest way to the evidence. The finding is that it is against the manifest way to the evidence, whereupon review of all evidence in the light and most favorable to the prevailing party, that an opposite conclusion is clearly apparent. Let me ask you a question about the issue of attorney's fees. What's the standard of review? Standard of review on the issue of attorney's fees is abuse of discretion. We acknowledge that, Your Honor. When you didn't raise it in your argument in the court below? Well, with respect to the indemnity provision, Your Honor, in the court below, section 10 of the contract wasn't voked, albeit the later part of that section was the one that was focused on with respect to the trial court. We would submit that it's appropriate to review the indemnity provision and that second provision that basically indicates that either party shall be entitled to recover from the other any attorney's fees incurred under force in the covenants of the agreement. From the practical standpoint, I think under both provisions, I think we have to show that we're the prevailing party on a substantial issue in the case. And if the court would like me to get into that at this point in time, I will. And because I believe with respect to the defendant's appeal, the record is clear. It's right with information with respect to the expert, the report and the expert opinion that the trial judge had enough information and did rely upon that information in reaching her decision. There's ample record and evidence in this record that the reviewing court can clearly see that the trial court relied upon to reach her decision. And didn't each of the parties recover fully on their independent claims in this lawsuit? No. We recovered fully with respect to our claim. With respect to the defendant's counterclaim, for 30, I'm just estimating here, $36,000, the award was $14,000, not the full amount. It was requested by the defendant. And there's a big distinction between the recovery that was received by the defendant and the recovery that was received by us in this case. We prevailed on a substantial issue in this litigation. I would rely on the – there are several cases that the parties have cited. And the majority of them are cases where the trial court had determined it's a draw. There were some issues, significant issues, one on both sides of the fence, so it's a draw. No attorney's fees are awarded. However, I'd like the court to take a look at the Powers v. Rockford Stop and Go Inc. case. That is a decision by this court in 2001, 761 Northeastern 2nd, 237. It was reported in our brief. And this case expands on the Med Choice case. And it gives an analysis for the reviewing court to implement when is there a significant recovery in a case. And I believe a reviewing court is able to take a look at the record and take a look at the decision down below to make a determination of what the significant issue is. That's what the Powers case did. The reviewing court in Powers determined what the significant issue was. In that case, it was a landlord-tenant dispute regarding contamination of a gas station. And the landlord sought to terminate the lease in that case because of the contamination and brought up several other ancillary matters, some damage to the gas station because the defendant in that case attached a telephone boost to the bill. But the primary issue in that case was contamination because of the gas bill. The defendant counterclaimed for an injunction that the plaintiff should not interfere with his quiet enjoyment of the premises. The trial court in that case determined that there was no termination, that the defendant had the right to cure. So the defendant prevailed on that issue. The trial court determined that the defendant had to remediate the project but determined that there was no termination. The trial court in that case awarded the plaintiff some costs to remove those telephone boosts that I indicated and awarded $875 in costs to do so. And the trial court also determined that the plaintiff in that case was entitled to its deterrence fees because it prevailed on that issue and awarded $37,918. The deterrence fees clause in that case, it was a lease, but it's very similar to ours. It indicated that each party agrees to pay and discharge all reasonable costs, deterrence fees, and expenses which may be incurred or made by the other in enforcing the covenants and agreements of the lease. And that's pretty similar to the language we have in our situation. The court in that power case construed that language to allow recovery to a prevailing party. The reviewing court found that the trial court's determination of an award of deterrence fees was an abuse of discretion in that case. They determined that the most significant issue was the environmental contamination. They determined that the trial court's ruling on the issue was essentially wrong because the plaintiff couldn't kick this tenant out. The tenant, though, had to remediate the project and reversed the trial court's grant of attorney's fees on the abuse of discretion standard and in forming that conclusion went through several factors in which the reviewing court looked at to determine what issue was the most significant. One was the value of the remaining claims. The second was the complexity of the claims. And the third was the time devoted to the other issues at trial. And when it looked at all these issues in that gas station case came to the conclusion that the trial court abused its discretion. That case is fairly close to this case. In this case I'm asking that the trial court be determined to abuse its discretion here by not awarding us attorney's fees. The value of our claims was roughly $149,000. We prevailed on the primary issue in this case completely with respect to the remediation of the site and the compaction rate. Versus the claim of the defendant, which was $36,000 in total, they only recovered $14,000 of that amount. For the extras. For the extras. The $14,000 was for the extras. The complexity of the claims. Excuse me, would you clarify, you said they did not recover the entire amount? They did not recover the entire amount. For the extras. Well, they recovered $14,000 for extras. Right, so they did recover 100% of what it claimed it was due for the extras. For the extras, yes. Okay. But it also claimed a portion of an unpaid contract balance of $22,000, which the trial court did not provide. The complexity of the issues clearly is in our favor in this case. They were seeking recovery of unpaid invoices. We were seeking a recovery of a technical breach of the lease with respect to the compaction rate, which required numerous witnesses, an expert, and pretty much took the, and the record is pretty clear on this, took a majority of the trial time. Here when you take a look at the time devoted at trial, the monetary issues and the complexity of the issues, clearly we were the prevailing party in this lawsuit. We won the primary issue alone. There was no draw, like in those other cases that were cited by the appellee here, and we believe the trial court abused its discretion in this case by not awarding us our attorney's fees. Affirming the trial court's decision would allow a party to avoid attorney's fees by prevailing on a minor issue when the major issue is won by the other side. We believe that the trial court's determination on an issue should be reversed and remanded back to the trial court for further proceedings because I think the case law we cited is pretty clear. We're also, if we're entitled to attorney's fees, we should be entitled to attorney's fees on appeal as well. With respect to the issue of the extras, I would like to touch upon that very briefly. The defendant was awarded $14,470.50 in extras. Extras should not have been awarded, in our view, at best, if the trial court did determine that they were owed, but the trial court should have just applied that as an offset against what we were owed, what we were determined to be owed on our primary claim. But we believe, and my client took the position, that the extras were not coverable by the defendant, that the extras were part of the – that work under the extras were part of the contract and they did not seek the written change order approval as required under the contract. What about the course of conduct argument that counsel made that there were other invoices where no change order was made and the invoices were paid? For the silk fencing and the one other item, yes, we acknowledge that. And Dave Mays had indicated at trial that he had verbally agreed to those that were paid. But with respect to the make-up of the $14,000 extras asked for by the defendant, we believe those fall into a different category. We believe those fall within the purview of the scope of the defendant's contract wherein they agreed to import fill needed and they were responsible for the supervision, placement, and stockpiling of the import fill and re-spreading the fill as required. That's what they require to do. This site requires a substantial amount of fill to be brought in to be leveled by the defendant, compacted appropriately. We believe that these extras fall within the scope of that agreement and that's why they were not paid. Unless the justice has any other questions, I think I'll touch it. Thank you. Thank you. Counsel, I guess I'd like to ask you first then the question. I didn't ask before with respect to the attorney's fees. Now, do you agree with opposing counsel who just indicated that he felt that both of you did not independently prevail, did not fully prevail on your independent claims, but rather they prevailed on the substantial issue in the case and recovered more and therefore were entitled to recover attorney's fees? I do not agree with that, Your Honor. Why not? First of all, I would dispute his characterization that we did not, that NERI did not recover 100% of its independent claims. It may be a matter of semantics, but the $22,000 that was denied, it was a corollary of the judge's decision on the compaction and with respect to what they were seeking. And to me, those are fundamentally interconnected. The court recognized that in its own decision when all it said as to the $22,000, we're denying that because we ruled in favor of Hallmark. The NERI claim for the extras is really the independent and the only independent claim of NERI. That was $14,800 and some odd cents. That was granted, awarded in total. And so first of all, I would submit that NERI was 100% successful on its independent claim. Now, even if the court would not agree with my characterization of that, I don't think under the prevailing case law that it is necessary for us to have prevailed 100% on our independent claim. I think we did. But to me, the relevant case law is essentially two items on attorneys' fees. First of all, the standard, which acknowledged by everyone, I think, is abuse of discretion. And as Hallmark has acknowledged in their own brief, the standard for that, I think the case that was cited was Carmen's Pizza from this court. Hallmark must show that the court acted arbitrarily without the employment of conscientious judgment or that the decision exceeds the bounds of reason and ignores principles of law. I don't think there's any way they get close to that type of standard to show that the trial court abused its discretion with respect to attorneys' fees. Now, the other case law that would be relevant on the issue would be cases cited in the briefs. Counsel relies on the Powell's case. I recognize that Justice Bowman was one of the authors of that opinion, as well as a subsequent opinion of R.J. Management. We would submit that the MedPlus decision of this court from 2000 is the standard that would control this case. Powers did follow MedPlus. Then there was another case, R.J. Management in 2004, that followed Powers. R.J. Management in 2004 followed the standard of MedPlus. To me, the Powers case, one must look at the bottom line of that case. In Powers, the plaintiff obtained a judgment for $875. They were awarded fees by the trial court of $38,000. On that basis, this court held that that wasn't appropriate. But if we look at MedPlus, as followed by the R.J. Management decision in 2004, the relevant standard is a prevailing party is a party who is successful on any significant issue in the action and achieves some benefit in bringing suit when it receives a judgment in its favor or when it achieves an affirmative recovery. That standard was met in this case by Neary, by the award of the trial court in favor of Neary. And for that reason, the trial court's decision was appropriate and certainly was not an abuse of discretion. One other comment, if I can, very quickly on the extras issue addressed by counsel. I think it's important to recognize that Hallmark, in its own brief, its final brief on page one. You have a little extra time. I'll just finish this point, Your Honor. Hallmark stated that it did not challenge the trial court's finding regarding the proposal on appeal, that being Neary's proposal. That's the critical document for the extras issue because it was that proposal that excluded from the base compensation the type of all of the work that was done, that was contemplated and included within the extras. It was excluded by the proposal. So these were extra invoices governed by the proposal. They paid two and then refused to pay the other three. Thank you. Do you feel you've had adequate time to address the cross-complaint? Yes, Your Honor. All right. Any questions? No. All right. Thank you. Okay. Case is taken under five minutes.